305 A.2d 110.

MARVIN M. SHILLER and WARREN L. SCHWERIN *d/b/a* OMEGA PROPERTIES *vs.* RAYMOND GEMMA *et ux.*

JUNE 8, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

KELLEHER, J. This is the defendants' appeal from a judgment entered in the Superior Court denying and dismissing their counterclaim which was filed in a civil action wherein the plaintiffs had sought specific performance of a real estate option.[1] The dismissal came at the conclusion of a three-day jury-waived trial.

---

[1] The parties have previously appeared before us in connection with this litigation on two occasions. *Shiller v. Gemma,* 108 R. I. 344, 275 A.2d 260 (1971); *Shiller v. Gemma,* 106 R. I. 163, 256 A.2d 487 (1969). In those cases we affirmed the Superior Court's dismissal of the plaintiffs' suit because of their failure to file a bond which would indemnify the defendants in the event they were successful in their counterclaim.

The plaintiffs Shiller and Schwerin are partners. They reside in New York. Their specialty is the development of shopping-center sites. In 1967 defendants, Raymond Gemma and his wife, Marjorie, were the record holders of title to a six-acre parcel of land located on the easterly side of Post Road near the Warwick-East Greenwich boundary line. Most of the land was in East Greenwich. On November 15, 1967, the Gemmas gave Shiller and Schwerin a 90-day option to purchase their parcel for a price of $145,-000. The consideration for the option was $1,500, which was to be credited towards the purchase price.

The Gemmas and their parcel were immersed in all sorts of mortgages, attachments and liens. Sometime in February, 1967, the six-acre parcel was sold by an auctioneer to Joseph Zenga. Zenga repudiated the sale and the Gemmas instituted a specific performance suit against him.[2] Later, Zenga apparently discovered the true worth of the parcel because on January 5, 1968 he recorded the auctioneer's receipt. This recording further beclouded the chaotic state of the parcel's chain of title. Shiller and Schwerin asked for an extension of their option so that an effort could be made to expunge the Zenga recordation. The Gemmas refused and almost immediately entered into negotiations with another combine whereby the parcel would still be a shopping-center site and the counter claimants would still receive $145,000. Unfortunately the second proposal never went past the negotiating stage. For some

---

[2]An examination of the papers in this suit shows an interesting switch of positions. After the suit was commenced, the Gemmas sought to delete their prayer for specific performance and seek only damages. Zenga, on the other hand, first denied any liability but later offered to submit to a judgment directing the Gemmas to convey the parcel to him for a total purchase price of $85,000. These changes came at a time when the parcel's potential use became a matter of public knowledge. This case is now dormant. Its quiescence is undoubtedly due to the fact that the parcel has lost its status as a shopping-center site.

reason which is not apparent in the record, the potential buyers decided to forego an opportunity to purchase Gemmas' property. A buy-and-sell agreement was never executed.

When the Gemmas' counterclaim came to trial in January, 1972, they had lost both potential customers. The entire thrust of their claim rests on their assertion that their lost opportunities were due to the fact that Shiller and Schwerin had induced the Gemmas' attorney to leave the Gemmas and enter their employ. Such an improper interference with their attorney-client relationship, so say the Gemmas, caused the financial loss which is represented by the $145,000 purchase price that never came to fruition.

The trouble with the Gemmas' theory of recovery is that it is inextricably entwined with a question of credibility and on this facet of their claim the Gemmas floundered.

The attorney in question specialized in matters that are related to real property law. Prior to the execution of the option, he had done work for plaintiffs and he had also performed services for the Gemmas. The attorney testified in the Superior Court. He knew of the Gemmas' financial condition and their desire to sell the parcel. He was aware of plaintiffs' interest in defendants' land. According to this witness, he brought the present litigants to his office and did no more than introduce "clients to clients." He insisted that he had made a complete disclosure to the Gemmas of his relationship with Shiller and Schwerin and the Gemmas were well aware of these circumstances when they arrived at his office. He said that he informed all the clients that they were free to make their own bargain as to such terms as price, amount of deposit and amount of land to be conveyed and once the terms were agreed upon, he would, if requested, draw up the option.

The Gemmas denied that the attorney ever told them that he represented the optionees. The trial justice, however,

found as fact that the Gemmas were fully aware of the attorney's dual role. This finding of fact is based on conflicting evidence. Such a finding will not be disturbed by us unless clearly wrong. The Gemmas have failed to persuade us that the trial justice erred in making this determination.

The defendants have also contended that the trial justice erred in excluding certain exhibits which purported to show the terms of the buy-and-sell agreement. This exclusion was no error. As stated earlier, no agreement was ever executed. An attorney who represented the second real estate syndicate said there were numerous draft proposals circulated between the parties. The proffered exhibits are preliminary work papers and are probative of nothing.

The defendants' appeal is denied and dismissed.

Mr. Justice Joslin did not participate.

*Tillinghast, Collins & Graham, Edwin H. Hastings,* for plaintiffs.

*Raymond Gemma,* pro se, for defendants.